UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUDRIANNA E. GIBSON,

    Plaintiff,

v.                                   Case No.: 8:26-cv-2039

DHRUV MANAGEMENT LLC,
a Florida limited liability company,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Audrianna E. Gibson, by and through her undersigned counsel, hereby sues Defendant, Dhruv Management LLC, and alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action by Plaintiff Audrianna E. Gibson against Defendant Dhruv Management LLC for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), seeking back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and other relief.

2.      This Court has original subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981.

1

3.     Venue lies in the Middle District of Florida, Tampa Division, under 28 U.S.C. § 1391(b)(2), 42 U.S.C. § 2000e-5(f)(3), and Local Rule 1.04(b), because the unlawful employment practices alleged were committed in Sarasota County, Florida, and the employment records relevant to those practices are maintained in Sarasota and Tampa, Florida.

## PARTIES

4.     Plaintiff Audrianna Gibson is a natural person, sui juris, who at all times material resided in Sarasota County, Florida. Ms. Gibson is Black/African-American.

5.     Defendant Dhruv Management LLC is a Florida limited liability company authorized to transact business in the State of Florida. Defendant operates the SpringHill Suites by Marriott — Sarasota/Bradenton, located at 1020 University Parkway, Sarasota, Florida 34234 (the "Hotel").

6.     At all times material, Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year and is therefore an "employer" within the meaning of 42 U.S.C. § 2000e(b). Defendant is also a "person" subject to liability under 42 U.S.C. § 1981.

## SATISFACTION OF CONDITIONS PRECEDENT

2

7.     On April 30, 2026, Plaintiff executed and timely filed a verified Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2026-03122, alleging race and color discrimination; hostile work environment; and retaliation. The Charge was dual-filed with the Florida Commission on Human Relations. The Charge was filed within 300 days of the unlawful employment practices alleged.

8.     On May 13, 2026, the EEOC issued a Determination and Notice of Rights authorizing suit. This Complaint is filed within ninety (90) days of Plaintiff's receipt of that Notice.

9.     Plaintiff's claims under 42 U.S.C. § 1981 are not subject to administrative exhaustion.

10.     All other conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

## GENERAL ALLEGATIONS

11.     On March 11, 2026, Defendant hired Plaintiff as the General Manager of the Hotel.

12.     Plaintiff's duties as General Manager included overseeing all Hotel operations and departments; hiring, retaining, training, and developing staff; ensuring compliance with brand, operational, and service standards; handling guest relations and complaint resolution; managing revenue targets and budgets;

3

inspecting guest rooms; maintaining the physical property; and acting as the on-site brand ambassador for the Hotel.

13.    Plaintiff was at all times qualified for the General Manager position.

14.    During Plaintiff's employment, Defendant did not issue any written warning, performance improvement plan, coaching memorandum, unfavorable performance evaluation, or other documented discipline of any kind to Plaintiff.

15.    On March 12, 2026 — Plaintiff's first full day at the Hotel and the day Plaintiff was formally introduced to the Hotel management team — the Hotel's Housekeeping Manager, Annalise Alacron, announced in a meeting attended by Vrushank Patel (a member of Defendant's ownership and management) and Anna Zajac (the outgoing General Manager) that she was "putting in her two weeks' notice and resigning."

16.    Ms. Alacron thereafter communicated to Defendant's ownership that she would not work for a Black woman.

17.    Ms. Alacron did not produce her purported resignation in writing. Following a private meeting between Mr. Patel and Ms. Alacron later that day, Ms. Alacron elected to remain employed.

18.    Beginning on March 12, 2026 and continuing through Plaintiff's April 14, 2026 termination, Ms. Alacron engaged in a sustained course of race and color-

4

based harassing conduct directed at Plaintiff, as described in the following paragraphs.

19.    During the housekeeping department's morning briefings — ordinarily conducted in English — Ms. Alacron switched the briefings to Spanish when Plaintiff arrived or approached, and repeatedly referred to Plaintiff as **"Negro"** in Spanish in Plaintiff's presence. Use of this word to refer to the Plaintiff was consistent in Plaintiff's interactions with Ms. Alacron. The housekeeping team would then look in Plaintiff's direction while Ms. Alacron laughed or smirked.

20.    On or about April 4, 2026, while Plaintiff was assisting a Spanish-speaking guest at the Hotel front desk using an English-to-Spanish translation application on her device (Plaintiff does not speak Spanish), the application continued to capture nearby speech and recorded Ms. Alacron stating, in Spanish, in substance: "I spoke with V. I told him it is me or [Plaintiff]. I cannot work with a black girl. She is no manager to me. I run this hotel. If I go, all the housekeepers go." Plaintiff preserved the capture and, on April 5, 2026, transmitted it from her Hotel work e-mail account.

21.    Ms. Alacron repeatedly threatened to resign and to walk out with the entire Hotel housekeeping team unless Plaintiff was removed as General Manager (the "take the house" threat).

5

22.    On multiple occasions, Ms. Alacron caused or permitted female undergarments, and blood and soiled linen, to remain in guest rooms that Ms. Alacron herself had inspected and signed off as "clean" — in a calculated effort to manufacture performance issues for, and to humiliate, the General Manager.

23.    Ms. Alacron refused to communicate with Plaintiff, pretended not to hear Plaintiff when Plaintiff spoke to her, and engaged in calculated personal avoidance.

24.    Plaintiff's peer at the Hotel, Christopher Sterling, the Maintenance Manager (White male), was similarly situated to Plaintiff in all material respects. Mr. Sterling was not subjected to the foregoing or any analogous conduct, was not terminated, and was not subjected to capitulation by Defendant to any subordinate's race-based refusal to serve under his management authority.

25.    Defendant had prior notice of Ms. Alacron's discriminatory conduct toward Black employees. Prior to Plaintiff's hire, Defendant's housekeeper Tydricka Bulls (Black) reported being subjected to race-based harassment by Ms. Alacron. After Ms. Bulls complained, Ms. Bulls was threatened with termination, had her hours reduced, and was ultimately removed from the schedule.

26.    On April 5, 2026, Plaintiff sent a written e-mail to Vrushank Patel and Hiten Patel titled *"Formal Concern Regarding Workplace Conduct,"* in which Plaintiff formally escalated Ms. Alacron's discriminatory and insubordinate

6

conduct, described the overheard discriminatory remark, and attached the Gemini translation capturing the remark.

27.     On April 5, 2026, Plaintiff sent a separate e-mail to Vrushank Patel titled "Clarification on Employment Status Following Last Thursday's Discussion," in which Plaintiff advised that, within one (1) day of Mr. Patel's meeting with Ms. Alacron, a General Manager position for Sarasota had been posted on Indeed, and requested formal clarification of her employment status.

28.     On April 6, 2026, Mr. Patel responded by e-mail. He stated that Ms. Alacron "did not use any discriminatory language," declined to open any investigation, and represented that the Indeed posting "may be for a different property" in Defendant's portfolio. No investigation was opened. No witness was interviewed. No discipline of Ms. Alacron followed.

29.     On April 14, 2026, nine (9) days after Plaintiff's written complaint of race discrimination and harassment, Defendant terminated Plaintiff's employment. Defendant did not issue any termination letter, separation notice, written rationale, or Reason-for-Separation code. Defendant offered Plaintiff no transfer to another property and no alternative to discharge.

30.     At the April 14, 2026 termination meeting, Mr. Patel told Plaintiff, in substance:

*"I'm sorry [Plaintiff] we're going to have to let you go — we don't want to get involved with all this lawyer and things, we can find another GM, we can't find an entire housekeeping team[,] she doesn't want to work with you and we can't force her."*

31. Following Plaintiff's termination, Defendant did not discipline Ms. Alacron and instead, on information and belief, awarded Ms. Alacron a week of paid vacation.

32. Ms. Alacron's race-based animus — including her announcement that she would not work for a Black woman, her repeated use of the racial slur "Negro," and her "take the house" threat — was intended by Ms. Alacron to cause Plaintiff's discharge and was a proximate cause of Plaintiff's discharge.

33. Defendant's decision to discharge Plaintiff was a direct and intentional capitulation to a non-Black subordinate's race-based refusal to serve under a Black manager.

34. As a direct and proximate result of the conduct described above, Plaintiff has suffered and continues to suffer lost wages and benefits; emotional distress; mental anguish; loss of sleep; humiliation; loss of professional dignity and reputation; and loss of the enjoyment of life.

35. Ms. Alacron, as Housekeeping Manager, controlled the housekeeping department, and her race-based refusal to work under Plaintiff's authority impeded Plaintiff's ability to perform her role as General Manager.

8

## COUNT I

## <u>TITLE VII — HOSTILE WORK ENVIRONMENT (RACE AND COLOR)</u>

36.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

37.    Plaintiff is Black/African-American and is dark in color, and is therefore a member of two protected classes under Title VII, 42 U.S.C. § 2000e-2(a)(1).

38.    Plaintiff was subjected to unwelcome harassment in the workplace by Ms. Alacron, including the repeated use of the racial slur "Negro" in Spanish in Plaintiff's presence; Ms. Alacron's announced race-based refusal to work under a Black manager; the "take the house" threat; the deliberate linguistic exclusion of Plaintiff by switching morning briefings to Spanish upon her approach; and the sabotage of inspected guest rooms with race-laden humiliations.

39.    The harassment was based on Plaintiff's race and color. The slur "Negro" is on its face race- and color-based; Ms. Alacron's announced refusal to work for a "Black woman" is overtly race- and color-based; and the sabotage of "inspected" rooms with female undergarments and blood-soiled linen was calculated to humiliate the General Manager.

40.    The harassment was sufficiently severe or pervasive — both objectively and subjectively — to alter the terms and conditions of Plaintiff's

9

employment and to create an objectively and subjectively abusive working environment. The use of an unambiguous racial slur is severe; the conduct occurred daily or near-daily over a five-week tenure and was pervasive; and the conduct included public ridicule in front of subordinates, calculated linguistic exclusion, the sabotage of work product, and an express, race-based refusal to recognize Plaintiff's authority.

41.     A basis exists for Defendant's liability. Ms. Alacron was Plaintiff's direct subordinate and therefore a coworker for purposes of imputed liability. Defendant had actual notice of the harassment from Plaintiff's April 5, 2026 written complaint and constructive notice from the prior Tydricka Bulls pattern, yet failed to take prompt or appropriate remedial action: it conducted no investigation, interviewed no witness, and imposed no discipline on Ms. Alacron.

42.     Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

43.     Defendant's conduct violated 42 U.S.C. § 2000e-2(a)(1).

44.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the injuries and damages alleged above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of

10

enjoyment of life; (b) punitive damages, Defendant having acted with malice or with reckless indifference to Plaintiff's federally protected rights, pursuant to 42 U.S.C. § 1981a(b)(1); (c) declaratory and injunctive relief; (d) prejudgment and post-judgment interest as allowed by law; (e) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and (f) such other and further relief as this Court deems just and proper.

## COUNT II

### 42 U.S.C. § 1981 — HOSTILE WORK ENVIRONMENT (RACE)

45. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

46. Plaintiff is Black/African-American and is a member of a racial minority protected by 42 U.S.C. § 1981.

47. Plaintiff had an employment contract with Defendant within the meaning of 42 U.S.C. § 1981(b).

48. Plaintiff was subjected to unwelcome harassment in the workplace by Ms. Alacron, as alleged above.

49. The harassment was intentional and was based on Plaintiff's race.

50. The harassment was sufficiently severe or pervasive — both objectively and subjectively — to alter the terms and conditions of Plaintiff's employment and to create an objectively and subjectively abusive working

11

environment, and it impaired Plaintiff's ability to make, perform, modify, and terminate the terms, conditions, and privileges of her employment relationship with Defendant.

51.    Defendant had actual notice of the harassment (Plaintiff's April 5, 2026 written complaint) and constructive notice (the prior Tydricka Bulls pattern) and failed to take prompt or appropriate remedial action.

52.    Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

53.    Defendant's conduct violated 42 U.S.C. § 1981.

54.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the injuries and damages alleged above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) compensatory damages without statutory cap, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (b) punitive damages without statutory cap, Defendant having acted with malice or with reckless indifference to Plaintiff's federally protected rights; (c) declaratory and injunctive relief; (d) prejudgment and post-judgment interest as allowed by law; (e) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and (f) such other and further relief as this Court deems just and proper.

12

## COUNT III

## <u>TITLE VII — RACE AND COLOR DISCRIMINATION (DISCHARGE)</u>

55.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

56.     Plaintiff is Black/African-American and is dark in color, and is therefore a member of two protected classes under Title VII, 42 U.S.C. § 2000e-2(a)(1).

57.     Plaintiff was qualified for the General Manager position: she possessed the requisite experience and training; she received uniformly positive feedback throughout her employment; and Defendant issued no documented discipline, performance improvement plan, or unfavorable evaluation.

58.     Defendant subjected Plaintiff to an adverse employment action by terminating her employment on April 14, 2026.

59.     Plaintiff's race and color were a motivating factor in Defendant's decision to terminate her employment. 42 U.S.C. § 2000e-2(m). Mr. Patel's statement at the termination meeting that Defendant "can find another GM" but "can't find an entire housekeeping team[,] she doesn't want to work with you and we can't force her" is a contemporaneous, in-record admission that the discharge was driven by Ms. Alacron's race-based refusal to serve under a Black manager.

13

60.    Defendant treated Plaintiff less favorably than a similarly situated non-Black peer, Christopher Sterling (White male), who was not subjected to capitulation by Defendant to any subordinate's race-based refusal and who was not terminated.

61.    In the alternative, Defendant is liable for race- and color-based disparate treatment under the principles of subordinate-bias ("cat's paw") liability: Ms. Alacron acted with race-based animus, intended that animus to cause Plaintiff's discharge through her "take the house" threat and her announced refusal to serve under a Black manager, and that animus was a proximate cause of Plaintiff's discharge.

62.    In the further alternative, Defendant is liable for race- and color-based disparate treatment under the coworker-preference doctrine: Defendant's decision to discharge Plaintiff in order to accommodate Ms. Alacron's race-based refusal to work under a Black manager is itself intentional race and color discrimination, irrespective of any independent racial animus on the part of Defendant's decisionmaker.

63.    Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

64.    Defendant's conduct violated 42 U.S.C. § 2000e-2(a)(1).

14

65.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the injuries and damages alleged above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages, Defendant having acted with malice or with reckless indifference to Plaintiff's federally protected rights, pursuant to 42 U.S.C. § 1981a(b)(1); (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and (h) such other and further relief as this Court deems just and proper.

## COUNT IV

### 42 U.S.C. § 1981 — RACE DISCRIMINATION (DISCHARGE)

66.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

67.     Plaintiff is Black/African-American and is a member of a racial minority protected by 42 U.S.C. § 1981.

15

68.    Plaintiff had an employment contract with Defendant within the meaning of 42 U.S.C. § 1981(b).

69.    Defendant intentionally interfered with Plaintiff's contract by terminating her employment on April 14, 2026, on the basis of Plaintiff's race. Race was a but-for cause of Defendant's decision.

70.    Mr. Patel's contemporaneous statement at the termination meeting — that Defendant could "find another GM" but "can't find an entire housekeeping team" because Ms. Alacron "doesn't want to work with you and we can't force her" — is direct evidence of intentional race discrimination and establishes but-for race causation.

71.    Plaintiff was qualified for the position; received uniformly positive feedback; was not subjected to any prior discipline; and was treated less favorably than her similarly situated non-Black peer Christopher Sterling.

72.    In the alternative, Defendant is liable for intentional race discrimination under the subordinate-bias ("cat's paw") and coworker-preference doctrines alleged above.

73.    Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

74.    Defendant's conduct violated 42 U.S.C. § 1981.

16

75.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the injuries and damages alleged above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages without statutory cap, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages without statutory cap, Defendant having acted with malice or with reckless indifference to Plaintiff's federally protected rights; (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and (h) such other and further relief as this Court deems just and proper.

## COUNT V

### TITLE VII — RETALIATION (DISCHARGE)

76.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

77.     Plaintiff engaged in statutorily protected activity within the meaning of 42 U.S.C. § 2000e-3(a) when, on April 5, 2026, she sent a written internal complaint to Defendant's ownership opposing Ms. Alacron's race- and color-based

17

discriminatory conduct toward her — conduct that Plaintiff reasonably and accurately believed to be unlawful under Title VII.

78.   Defendant subjected Plaintiff to a materially adverse employment action when, on April 14, 2026, Defendant terminated her employment. Termination is a materially adverse action under any reasonable construction of 42 U.S.C. § 2000e-3(a).

79.   Plaintiff's protected activity was a but-for cause of her termination. Mr. Patel's statement at the termination meeting that Defendant did not "want to get involved with all this lawyer and things" is a contemporaneous, in-record admission of retaliatory motive. But-for causation is further established by the close temporal proximity — nine (9) days — between Plaintiff's April 5, 2026 protected activity and her April 14, 2026 termination.

80.   Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

81.   Defendant's conduct violated 42 U.S.C. § 2000e-3(a).

82.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the injuries and damages alleged above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages,

18

including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages, Defendant having acted with malice or with reckless indifference to Plaintiff's federally protected rights, pursuant to 42 U.S.C. § 1981a(b)(1); (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and (h) such other and further relief as this Court deems just and proper.

**COUNT VI**

**<u>42 U.S.C. § 1981 — RETALIATION (DISCHARGE)</u>**

83.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

84.     Plaintiff engaged in statutorily protected activity within the meaning of 42 U.S.C. § 1981 when, on April 5, 2026, she sent a written internal complaint to Defendant's ownership opposing Ms. Alacron's race-based discriminatory conduct toward her.

85.     Defendant subjected Plaintiff to a materially adverse employment action when it terminated her employment on April 14, 2026.

86.     Plaintiff's protected activity was a but-for cause of her termination. Mr. Patel's statement at the termination meeting that Defendant did not "want to

19

get involved with all this lawyer and things" is a contemporaneous, in-record admission of retaliatory motive. But-for causation is further established by the nine (9)-day temporal proximity between Plaintiff's protected activity and her termination.

87.    Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

88.    Defendant's conduct violated 42 U.S.C. § 1981.

89.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the injuries and damages alleged above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages without statutory cap, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages without statutory cap, Defendant having acted with malice or with reckless indifference to Plaintiff's federally protected rights; (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and (h) such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

20

90.     Plaintiff hereby demands a trial by jury on all issues so triable as of right.

Dated: July 16, 2026.

Respectfully submitted,

/s/ Frank M. Malatesta
**Frank M. Malatesta, Esq.**
Florida Bar No. 0097080
MALATESTA LAW OFFICE
871 Venetia Bay Blvd., Suite 235
Venice, Florida 34285
Telephone: (941) 256-3812
Fax: (888) 501-3865
Frank@malatestalawoffice.com
heather@malatestalawoffice.com
Staff@malatestalawoffice.com
*Attorney for Plaintiff*

21